## Charles Fox v. Jerome G. Steever.

55   255
156s   622
55   255
64   546

1. CONTRACTS—*Payment of Differences Not Conclusively Gambling.*—The fact that transactions in grain are closed by the payment of differences does not conclusively establish the fact that the business is that of gambling in grain.

2. GAMBLING—*Speculating in Grain.*—The fact that a man desires to speculate in grain is not conclusive evidence that he intends to gamble.

**Memorandum.**—Assumpsit. In the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Declaration for money expended, etc.; pleas, general issue and special plea stated in the opinion; trial by the court without a jury; judgment for plaintiff; defendant appeals. Heard in this court at the October term, 1894, and affirmed. Opinion filed November 12, 1894.

### STATEMENT OF THE CASE.

The material facts disclosed by the record, which this appeal brings before this court, are as follows: Appellee, Jerome G. Steever, a commission merchant on the Board of Trade of Chicago, seeks in this case to recover for money expended by him for appellant in certain deals in wheat and pork on the Chicago Board of Trade.

Defendant's special plea was substantially as follows:

"That the sole and only consideration upon which the said promise in said contract mentioned was made was for money paid by the plaintiff in speculating for the defendant on the market price of grain, ribs, lard and like products on the Board of Trade in Chicago, in said county, to wit: By buying and selling options in said products for the defendant; that in each and all of said deals and options it was understood and intended by both the plaintiff and the defendant that neither party was to receive or deliver the said products so bought or sold by the plaintiff for the defendant; that neither party was to receive or deliver the said products so bought or sold by the plaintiff for the defendant, and that the losses or gains resulting from such transactions should be settled by the payment of the difference between the price at which the plaintiff bought or sold for the defendant, and the market value of the same at the time appointed for the delivery thereof; wherefore by force of the statute in such case provided the said promise is wholly void."

Appellant, a lumber dealer and resident of Grand Rapids, Michigan, on December 6, 1892, first met appellee at appellee's office in Chicago, and told appellee that he (appellant) wished to speculate, and asked appellee if he wished to do his (appellant's) business. Appellee assented. Appellant asked about what margins he would have to put up, and was told by appellee that he would have to put up fifty dollars on pork and five to ten cents per bushel on wheat. Fox gave Steever $1,000 for margins, and was asked by Steever if he (Steever) was to put up the whole amount, and Fox said yes.

After this, under orders given by Fox to Steever, the following purchases and sales were, from time to time, made by Steever for account of Fox:

| | |
|---|---:|
| December 6, '92. Bought 10,000 bu. May wheat at 78¾ cents.................... | $ 7,875.00 |
| December 7, '92. Bought 5,000 bu. May wheat at 78¼ cents...................... | 3,912.50 |

Fox v. Steever.

| | |
|---|---:|
| January 16, '92.  Sold 10,000 bu. May wheat at 83¾ cents............................ | 8,375.00 |
| January 17, '93.  Sold 5,000 bu. May wheat at 78¼ cents............................ | 3,912.00 |
| January 24, '93.  Bought 10,000 bu. May wheat at 76⅛ cents............................ | 7,812.50 |
| January 25, '93.  Sold 5,000 bu. May wheat at 78⅛ cents............................ | 3,906.25 |
| January 25, '93.  Sold 5,000 bu. May wheat at 78¼ cents............................ | 3,912.50 |
| April 13, '93.  Sold 500 bbls. Sept. pork at $17.20............................ | 8,600.00 |
| April 14, '93.  Sold 500 bbls. Sept. pork at $17.50............................ | 8,750.00 |
| April 17, '93.  Bought 50,000 bu. July wheat at 73¼ cents............................ | 36,625.00 |
| April 28, '93.  Sold 25,000 bu. July wheat at 73¼ cents............................ | 18,562.40 |
| April 28, '93.  Sold 25,000 bu. July wheat at 74⅛ cents............................ | 18,531.25 |
| May 26, '93.  Bought 10,000 bbls. Sept. pork at $22.60............................ | 22,600.00 |
| | $153,374.50 |

At no time did Steever call upon Fox for any money except margins to cover fluctuations in the market price of the commodities.

Upon these transactions no property was ever delivered to or by appellant.

A part of appellant's deals were closed from time to time by the setting off of purchases of one commodity against sales of the same, until finally the remainder of his transactions were closed by his being, as it is termed, sold out for his failure to supply margins as they were demanded.

In no instance does it appear that any articles bought or sold were actually received or delivered by appellant.

Mr. Steever, as to this, testified as follows:

Q.  And you don't know to whom you paid that money?

(Referring to $93.75 loss on wheat.) A. Why, I know that I paid it in the course of my ordinary trades; I offset one contract against another, and if there was money owing on them I paid it, if there was money due on them I collected it, and if the stuff was delivered to me I paid for it, and if I delivered the stuff out I received my pay for that, and in the whole round-up of it I got back the amount of money, or paid out the amount of money that my customers, all of them, have made or lost while trading in that month's delivery.

Q. That is the process what you term the Board of Trade Clearing House? A. The Board of Trade Clearing House, yes, sir.

Mr. Arnd: Q. Same as a bank clearing house? A. Same as the bank clears a check.

Q. How do they settle these deals then? A. Well, in executing orders for different people, commission merchants —they deal with different firms upon the floor—frequently they will have a purchase and a sale of the same article with the same house, just as I had in these cases if you bring them together; whatever there is coming to me, or that I owe, is paid, and the trades are canceled; one offsets the other.

Q. Regardless of any tacit understanding there is between them? A. There is absolutely no understanding between them. In the course of trade, whenever I can, during the current month in which this property is bought and sold, whenever we can, we offset one contract against another; when the first of that month arrives, however, it is necessary for every commission firm to have one or more, as many as they consider necessary, clerks upon the Board of Trade during what we call delivery hour, and everybody during that month, when we have any outstanding contracts for that month, we must have a clerk there to receive these goods for which we pay, and to deliver them to the person to whom we have sold them, if we have them sold.

Q. Now as to the round-up there, you account for whatever losses you have incurred in your trade, and you also

get credit for whatever gains you have made in the trades?
A. Yes, sir.

Q. So that in the case of Mr. Fox, if there were losses upon deals of wheat or pork in that settlement, you pay out the entire amount of that loss? A. Yes, sir.

Q. And have to stand it individually? A. Yes, sir.

Q. And you did so settle in this case, did you? A. Yes, sir.

Q. For Mr. Fox? A. Yes, sir.

Q. You claim to have paid this amount of money in full, Mr. Steever? A. Yes, what commissions were deducted from trades I added to losses.

Q. Was there ever any conversation or understanding between you and Mr. Fox whereby your deals should not be settled by the payment of differences? A. No, sir.

Q. And you intended, did you, to deliver him all the grain that you bought for him? A. If he remained the owner.

Q. Answer my question, will you? A. If he remained the owner when the trade matured—when due for delivery. I expected to take it and pay for it.

Q. That is you mean if the contract ran out for delivery? A. The delivery was all through the month. If the property, 10,000 wheat for instance, had been delivered to me, I should have paid for it, and expected Mr. Fox to take the property and pay for it.

Q. What are margins? A. Well, it is a sum of money that is furnished to protect the person making the contract for another person against loss.

Q. Well, suppose that you sold for Mr. Fox 5,000 bushels of wheat to be delivered at a future time, what loss could result to you from such a transaction? A. I would have to deliver the property.

Q. You would have to deliver the property? A. If it was not offset, as I have just explained.

Q. The Court: In other words, you appeared as principal on the board? A. Yes, sir.

Q. Why do you not require of your principal the full contract price? A. Well, it is not customary to do it.

Q. Why isn't it customary to do it? A. These contracts that are made for future delivery, if a man gives sufficient funds to protect against the current fluctuations of the market, there is no necessity of his putting up the full sum.

Q. Isn't there a tacit understanding among the members of the board, that when they buy or sell a commodity on the Board of Trade, that the deal can be settled by the payment of the difference between the purchase price and the price on the market at the time of delivery? A. Absolutely, no; that is positively prohibited. It is not done that I ever heard of.

The court found the issues for the plaintiff and rendered judgment thereon, from which the defendant prosecutes this appeal.

Appellant's Brief, Arnd, Evans & Arnd, Attorneys.

It is the special province of this court to review questions of fact and determine whether the finding of the trial court should be set aside. It is not essential to this review that propositions of law should have been submitted to the court below. Smith v. Dauel, 29 Ill. App. 290; Udell v. Howard, 28 Ill. App. 124.

Options for future delivery, where no delivery is contemplated, is a gambling contract and is illegal and void. Starr & Curtis' Stat., Chap. 38, Sec. 178; Tenney v. Foote, 4 Brad. 594; Webster v. Sturgess, 7 Brad. 560; Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33; Tenney v. Foote, 95 Ill. 99; Pearce v. Foote, 113 Ill. 228.

A contract for the sale and future delivery of grain by which the seller has the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they choose, and which on its maturity is to be filled by adjusting the differences in the market value, is but an optional contract in the most objectionable sense, and being in the nature of a gambling transaction, the law will not tolerate it. Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33.

Fox v. Steever.

If such contracts are merely made as a cover for gambling, without any intention to deliver and receive the commodity, but merely to pay the difference between the price agreed and the market price, they are within the statute against gaming, and void. Colderwood v. McCrea, 11 Brad. 543.

It is a question of the intention of the parties and not the form of the contract. Colderwood v. McCrea, 11 Brad. 543.

Evidence of how the parties have been in the habit of dealing together in respect to like transactions prior to the one in controversy, is competent. Colderwood v. McCrea, 11 Brad. 543; Brand v. Henderson, 107 Ill. 141.

Where parties enter into a contract which is illegal or contrary to public policy, the courts will not assist either of them, but will leave them in the position in which their illegal acts have placed them. A party advancing money under such a contract can not recover for the same. Samuel v. Oliver, 130 Ill. 73; Penn v. Bornman, 102 Ill. 523.

Appellee's Brief, John M. Hamilton, Attorney.

The burden of proof is upon the defendant to show that the transaction was a gambling contract and illegal, "and ought, in a case like this, to be required to make this proof clear by a preponderance of the evidence." Pixley et al. v. Boynton et al., 79 Ill. 352; Benson v. Morgan & Co., 26 Ill. App. 25; Logan v. Munsie & Brown, 81 Ill. 419.

See, also, to the same effect: Cole v. Milmine, 88 Ill. 349; Miller v. Bensley & Wagner, 20 App. 530; Corbett v. Underwood, 83 Ill. 330.

"Agreements for the future delivery of grain or any other commodity are not prohibited by the common law nor by any statute of this State, nor by any policy adopted for the protection of the public." Pickering et al. v. Cease, 79 Ill. 330.

"Such contracts, whether for immediate or future delivery, are valid in law, and receive its sanction and all the support that can be given to them." Pearce v. Foote, 113 Ill. 240.

" A person dealing at a particular market will be taken to have dealt according to the known general custom and usage of that market, and if he employs another to act for him in buying or selling at such market, he will be held as intending that the business should be conducted according to such general usage and custom of such market." Samuels et al. v. Oliver et al., 130 Ill. 79; Bailey v. Bensley, 87 Ill. 556; Doane et al. v. Dunham, 79 Ill. 131; Lyon et al. v. Culbertson, 83 Ill. 33; Lonergan v. Stewart, 55 Ill. 44.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

There is in this record an entire absence of any direct evidence that the transactions, which are the basis of this suit, were illegal, or a mere gambling operation prohibited by statute.

It may be the case that counsel for appellant correctly characterize this dealing as gambling. In arriving at a conclusion as to this, we must bear in mind that, not only in the absence of evidence to the contrary, are acts which, consistently with the known facts, may be lawful and proper, presumed to be so, but we have in this record the testimony of appellee, in effect, that there was no understanding that the deals should be settled by the mere payment of differences.

We do not regard the fact that the transactions were closed by the payment of differences, as conclusively establishing that the business was but gambling.

In a market like that at Chicago it will often be the case that commodities, sold, not by sample, but as part of a great quantity, graded by previous inspection, will change ownership many times ere an actual delivery of the property itself takes place. The commodity in such cases is treated like the transfer of credits through banks—very many debts, aggregating a large amount, being paid by the actual transfer of one small sum.

In the present case appellant does not himself testify that there was any understanding that his dealings were to be closed by the mere payment of differences; the utmost in this regard he said was, that he wished " to speculate."

There has not yet been established for this word so bad a significance that it is synonymous with "gamble."

We are not called upon in this opinion to say that had we heard this case below, we should have come to the conclusion that the Superior Court did. What we hold is that we find in this record no sufficient warrant for setting aside the judgment of the Superior Court, and it is affirmed.